Now proceed with Arnold against Saul 20-2067, Mr. Rodman for the plaintiff's appellant. My name is Jason Scott Rodman. May it please the court. I represent the appellant Maretha Janice Arnold. This is an appeal of a Social Security Disability Title II, really Subchapter II, claim. It's a Step 4 case, which means that the administrative law judge has to build a lot, you know, it's the plaintiff's burden, but the administrative law judge has to build a logical bridge from the evidence to the notion that, specifically in this case, Arnold can do her past work as it's defined by the DOT and the vocational expert, including 90% on past preparing and submitting facility budget reports and reviewing and evaluating facility activities to ensure conformance to state and local regulations. But what this case is really about is side effects. And there's two primary ways we can look at the side effects argument. One is an inadequate discussion of side effects. Another is a side effect finding that is not supported by substantial evidence. So the first is that, you know, the plain language of the spot that discusses or arguably discusses side effects is just about the thumb. I mean, yeah, it's 29F, which doesn't seem to really be about the thumb, but that seems almost like a typo based on just the plain language of it. In addition, there's as early as 2-7-12, which is when, which is, I think, roughly a week before this claimant went to a significantly reduced status in her prior job. There's evidence that that's when the medication started, that's at AR-233. And so this case is all about the medications and what exactly the effects are. When you read the administrative law judge decision, it seems like a refrain, you know, this is treated, this is treated, this is treated, this is treated. But, you know, what the effect of those treatments is, isn't always exactly clear. Certainly not the lead issue, but an issue has to do with IBS and the pain medication in hearing the claimant discusses it as if she is in such pain, she chooses that instead of, you know, instead of really treating the IBS because they conflict. Whereas in the administrative law judge decision, the administrative law judge seems to say that she chose the opposite, which is that she chose to live with the pain to treat the IBS. Where that falls out, I'm not sure. And some of this is in the briefing, which is the interrelation of the mental parole law versus the pain medication, for example, the Nusenta. But even before Nusenta, it was always an opioid. And one additional site, 1061, talks about how it's confusing as to which is which. And so in general, this discussion didn't happen and it's central and that's problematic. My second, my second oral argument this morning. Yes. What's the most specific evidence of actual side effects that was overlooked? Okay. I think some of it has to do with specifically the, and this is maybe the big in the room, the, the likelihood of I think the technical term for it is hyper analgesia or tolerance to opioids. And, and the rheumatoid doctor seems to hint at that explicitly when she talks and it says the meds are not likely to help. And then this comes up. And that's not a side effect of medication. I mean, your argument is that she experienced side effects from her medication that impacted her ability to work, not that the medication didn't treat the underlying issue. In effect of the medication, a side effect of opioids is that they don't work forever, that they have a tendency to, to potentially even increase pain. And, and, and, and that 106.1 is an example of a, of a different side effect, because like I said, they overlap where there's occasional dizziness. And they're not sure if it's the nusenta or the metroprolol causing it. But, but this, this feeds into my second argument this morning or another way of presenting in the briefing, which is, and this is somewhat in response to the defendant's brief as well, excuse me, the commissioner's brief as well. But which is to say that there seems to be inadequate support and a lack of substantial evidence for the, the finding, if we call it a finding, that there has been consistency, consistent report of lack of side effects. So simply looking at 29F, it, it appears, and it appears that that office has a routine to, to note that side effects are not causing problems if they're not causing problems. But only two of the four times does that occur, which, which is, is less than consistent report of no side effects. That's half the time. And then the- Is your argument that we should assume from the silence that there were side effects? Yes, maybe. In addition, the first time that, that, that, you know, it's noted and by the way, it's in the HPI section, which is the history of present illness, which is typically the complainant complaining. And so she's in great pain and she, you know, she feels like the meds are keeping her from being in worse pain. So first time she's, she's at seven to 10 pain. She says, you know, she doesn't have side effects. There's an actual diagnosis on record, which is a long-term current use of opioid analgesic. It's in the impression diagnostic section. So that's a condition, which also corresponds with the side effect. And then the, the, the second time the pain goes up, it's seven to eight. She doesn't deny the side effects that time. They don't, they end up lining her up for a different treatment because she's already at six times per day. And they say they can't do more than that because it's an opiate. And how is that a side effect, Mr. Rodman, as opposed to ineffective treatment? So they're going to try something else. It's a side effect. Side effect of medication. How, what's the evidence that there were side effects of the medication, not the underlying condition? So the side effects of the medication include the fatigue, the dizziness, and this hyper analgesia intolerance issue I submit to you is a side effect in addition. And so just, just to be efficient here that those are the core of my arguments and I'd like to reserve time for. All right. Thank you, Mr. Rodman for the government, Mr. Montenegro. Thank you, your honor. My name's Leo Montenegro appearing for the defendant, the commissioner of social security. As was stated, the only issue in this case involves the side effects of medication. Now side effects of medication are a sub-issue of the credibility analysis, the analysis of subjective symptoms, such as pain. Pain's not objectively ascertainable or measurable. So the commissioner and his regulations has a two prong analysis. The first prong is, are there actually medical problems, impairments that could possibly have caused the alleged pain? It's not a problem here. It's undisputed to claim it did. The next question is whether the duration and intensity of the alleged symptoms or pain is consistent with the evidence that is, is how long and how much the pain was, is that consistent with what the evidence actually says? And this includes consideration of various factors, including side effects of medication. And in this case, the ALJ discussed several factors, including the nature of the treatment, which was conservative, consisted mostly of medication and exercise. The ALJ talked about that at pages 20 and 23 of the record. Another factor was the objective medical findings didn't support, didn't support the degree of pain alleged. There was no nerve compression in the physical examination. Findings didn't change over time. And the medical opinion evidence also supported the ALJ's analysis because the medical opinions generally supported the idea that claimant could do light work. As to side effects in particular, claimant seems to be relying mostly on the statements of pain management physician, Dr. Carl. Now, Dr. Carl's reports plainly said, clearly said that claimant, that her Nucinta, her pain medication helped, quote unquote, without any side effects. And he said this several times, pages 916, 1057, and 1045. Those were specific statements about claimant and how she was not experiencing side effects. Claimant's argument appears to be based on Dr. Carl's other statements about the medication itself, about how to use it, which is to say not to take the medication at work while driving or while using heavy machinery. That's at pages 928, 923, 918. My position is, Your Honor, that those are statements about how to use the medication. They don't establish the claimant actually experienced any side effects at all. And in fact, Dr. Carl said just the opposite. So between those two statements, I think it's reasonable to conclude that Dr. Carl was saying that claimant did not have any side effects because he said just that. Now, to the extent that you want to look at those admonitions about use of medication as some kind of limitation on claimant's ability to work, well, I have to point out that Dr. Carl did not prescribe these medications to be used at specific intervals or even that much. Instead, they were prescribed on an as-needed basis. He didn't say you have to take this consistently to control your pain. He said essentially take it when you need it, but not more than every four to six hours. So there were some limitations built in there. But my point is the claimant had some control over how she could take the medication. On top of that, the as-needed basis, I think, is consistent with what the ALJ said elsewhere about the nature of the treatment. If it's this as-needed basis speaks, I think, to the level of claimant's prescribed when she needs it as opposed to more often than that. Now, there's other evidence in the record as to side effects. Dr. Greer, the consultative examiner, didn't find any side effects, but she did say that claimant might have some fatigue due to her beta blocker therapy, a cardiac therapy. But Dr. Greer, again, as with Dr. Carl, Dr. Greer didn't say that claimant had some fatigue. So I don't know that that helped claimant's case there. On top of that, the cardiologist himself, Dr. Hardin, did speak to side effects. He said essentially the claimant didn't have side effects except for a little digestive tract problem, a little gastroesophageal reflux disease that was treated. That's at pages 931, 933 to 934. He didn't mention it again, so presumably that side effect was resolved with treatment. That's pretty much the medical opinion evidence as to side effects, Dr. Carl, Dr. Greer, Dr. Hardin. I submit that there is no evidence supporting the existence of side effects. Claimant points out that the ALJ only talked about claimant's thumb medication when talking about side effects in the record, and that's true. I think that's the only place in the ALJ's decision where he talks about side effects, but I think that's understandable if the medical opinion evidence didn't support any side effects or at least any significant ones. Plus, the ALJ in his decision talking about thumb medication also cited evidence from Dr. Carl about, and I believe Dr. Hardin as well. So it's like the ALJ's consideration was limited only to the thumb medication. Oh, and to the extent that claimant argues that Dr. Carl's admonition about the use of the pain medication applies to all medication in the record, well, as I just said, the cardiologist, Dr. Hardin, and the consultant examiner, Dr. Greer, didn't find any persistent significant side effects of medication there. So I guess my points overall are that none of claimant's doctors affirmatively said that she was experiencing any persistent significant side effects. Claimant hasn't established also the other aspects of the ALJ's credibility finding, the other factors that the ALJ considered are unchallenged. And also, as claimant pointed out at the beginning of his argument, this is a case where the ALJ found that the claimant couldn't do her past, or could do her past relevant work, and therefore was not disabled. So to the extent that claimant is arguing that her side effects prevented her from working, well, Dr. Carl's admonition about the use of medications doesn't really establish side effects, or if they somehow do, they don't establish any specific side effects. How do these medications, if claimant actually has to take them during work hours, and is not allowed to do so because of Dr. Carl, how do the side effects, if any, actually prevent her from performing her past relevant work, as I believe it was an assistant daycare director, which is very different from the admonition about not doing commercial driving, or working with heavy machinery, I think it was. In the end, I submit that the ALJ's findings were supported by substantial evidence. The credibility finding was supported by the reasons that the ALJ gave in his decision, and that claimant's stated issue about side effects, well, again, submit there is no evidence to support any side effects that would undercut the ALJ's decision in any way. If there are no questions, Your Honor, that's all I have. Thank you, Mr. Montenegro. Mr. Rodman, rebuttal? Okay. I want to start by talking about what this case is about, what the burdens are, what the expectations are, and specifically, I'll point to the Nelson case, for example, which tends to be the opposite pole of what I'm asserting in this case. But that case, there was no, if I'm reading it right, the evidence there was just the claimant saying at hearing that, oh, I've got these side effects. This is quite different. I mean, yeah, there's various snippets, but there's a whole handful of various snippets supporting that there were side effects issues that needed to be accounted for and considered. In fact, like the small case that is referenced in the Nelson case, the ALJ arguably actually makes a finding here, but it's not clear that that finding is supported by substantial evidence. And not only that, as the Commissioner also acknowledges, this case is about step four, and the logical bridge at step four. And so specifically here, there was an accepted SSA ruling or assessment that it was from 2012 up until the end of SGA, it was a subsidized, so it was 50% less productive, more rest periods, slower, can't complete all required work, lower quality standards allowed to process. Now, the ALJ, the Administrative Judge primarily talks about this prior work in terms of, oh, well, she could clearly continue to do the maximum exertional level beyond what, you know, the minimum, beyond, say, the sedentary. However, what the Administrative Law Judge does not do is think about that whole problem in the context of these multi-layered apparent likely side effects issues that more than one doctor discusses. And even in the 29F, you know, this specifically, do not take the medications with work. And in those same reports, there's discussion that, hey, she's got a daycare center job. And then, oh, don't take it at work. And that's all I have this morning, and I thank you for your time. All right. Our thanks to both counsel. The case is taken under advisement, and the court will be in recess.